Good afternoon. May it please the court, I'm Allison Clare, Assistant Federal Defender, on behalf of the petitioner and appellant, Mr. Lazor, and I will attempt to reserve three minutes for rebuttal. The primary claim that was presented in this case is the retaliation claim, and the magistrate judge heard three full days of live testimony and also was presented with several volumes full of printed exhibits. However, the findings and recommendations include no factual findings about the claim at all. Rather, the FNRs adopted by the district court disposed of the retaliation claim on the basis of a purely legal ruling which was erroneous, that a retaliation claim cannot be considered in a habeas corpus proceeding. While it's true that this court's jurisprudence regarding retaliation by prison officials against inmates has arisen historically in the 1983 context, there is no rule that divides up particular types of constitutional violations and assigns them a form of action. As recently as last year in Ramirez v. Galazza, which is in the briefs, the Court discussed the relationship, once again, of 1983 and habeas, which are two alternative ways of addressing violations of inmates' rights. And the form of action and the different remedies available depend on whether the claim involves the duration of custody or whether the relief granted or the relief sought if granted would affect the duration of custody. So this premise of the magistrate judge adopted by the district judge that the retaliation claim could not be considered is simply wrong as a matter of law. And on that basis, the district court's ruling must be overturned. In which category do you assert that the claim in this case falls? Well, this was presented by Mr. Laser as a habeas case and has been maintained as such. There was a preliminary ruling in the case. But you articulated for us the breakdown of the cases, whether or not they should be treated as habeas or 1983, based on whether or not there is an effect on the duration of time, the prison time. So under the facts of this case, would there be an effect on the sentence, on the duration of the sentence, if the claim is pursued, is successful? Yes, it would. And I think that it is unusual in that respect. The rule of thumb that this Court and the Supreme Court have articulated about effect on duration of custody seems straightforward. And in the context of California's regulation and penal code statutes regarding sentences, it can actually be a little tricky. We have most inmates serving determinate sentences who will be released. And their actual release dates are calculated according to formulas that are fairly mechanistically applied. So things like good time credits have an automatic effect on release dates. Let's cut to the chase in this case. The good time credits were restored. So tell me how this action affects the length of the prison sentence in light of the fact that the good time credits were restored. Because Mr. Lazor, unlike Mr. Wilson in the Wilson v. Terhune case that Apolli had cited, has gone before the Board of Prison Terms twice for parole suitability hearings, in 1994 and 1996, in which this disciplinary decision that is being disputed here was raised by the parole board as a basis for denied parole. He was found unsuitable. Admittedly, there were numerous other issues that also came up at the hearings. But the records of both of those parole proceedings are before this Court and on their basis. But you can't establish that this finite proceeding had any effect on the length of his service, of his term. Well, I think that's particularly clear, Your Honor, regarding the 1994 hearing, because this particular incident was discussed at great length. The transcript of that proceeding is in Apolli's supplement. But still not the only basis for denial. Not the only basis for denial, but the one — How can you establish that it affected the length of his sentence if it was one amongst several bases for denial? Because it was the one that the parole board spent the most time discussing, which indicates that it was the one of most importance to them. The other fact that distinguishes this case from the Wilson case, and obviously for the reasons that Judge Rawlinson's question implies, the question of mootness is intimately related to whether habeas jurisdiction lies in the first instance, which was an issue that was raised early on in the district court proceedings and resulted in a remand from the district judge to the magistrate for the hearing that we had. But, again, the way that Wilson is distinguishable is not only because there actually was a parole decision in which this disciplinary matter was considered, but also in Wilson the offense was an escape. And even had the disciplinary finding been expunged, the fact of Mr. Wilson's AWOL status would have been indisputable and would have provided alternate grounds. Mr. Laser, on the contrary, has adamantly insisted on his actual innocence of the disciplinary charge. And also, the finding, which we allege was retaliatory, is the only evidence, if you will, that he did, in fact, possess escape paraphernalia. Were this expunged from his record, there would be no alternative basis of the same kind of disputed conduct. I don't get your argument, because there were 18 infractions, including the one at issue here, in this particular case. The petitioner's file. So I just don't get your argument that that one infraction would drive the parole decision. That does not follow to me. Mr. Laser has had a difficult time in prison, as the record reflects. And I understand the Court's concern with that. And all I can say on Mr. Laser's behalf is that this one instance has been the one of greatest concern to the parole board and to Mr. Laser. And the other incidents that often are raised and were raised in these parole hearings that were subsequent to this one, Mr. Laser has argued repeatedly are, in fact, indirect consequences of this event. But the problem is you have the burden to show that expungement would affect his chances for parole. And it's difficult for you to meet that burden in light of the record. Well, Your Honor, if in the end I fail to persuade on that point, I want to point out that the district court was repeatedly asked by Mr. Laser to construe his habeas petition as a 1983 action, if a final decision were reached that this were not cognizable as a habeas petition. And those requests were never ruled on. First, there was a finding by the magistrate judge early on that this was not a habeas case because there was insufficient nexus to custody. We objected to that and persuaded the district judge that on the basis of the parole transcripts, there was sufficient nexus. We went back to the magistrate judge, argued the merits. Now, on appeal, mootness is raised a second time, but both in front of the magistrate judge before and after the remand from the district judge and before the district judge, we said if this is not going to go ahead in habeas, what Mr. Laser wants is not damages. He wants this thing expunged from his record. That's a remedy that is available either in 1983 or in habeas. And, frankly, it does not matter to my client in what form he receives an order granting expungement. If we were to construe this as a 1983 case, what you're asking for relief against the hearing officer, right? We are asking simply for declaratory and injunctive relief, removing this 115 and all subsequent classifications based on it and references to it from the central box. And we are asking for a clear and substantive due process theory. Yes, Your Honor. And so what's your best case authority for the proposition that a due process claim lies against a hearing officer who's rendered a decision in the disciplinary context? Well, strictly speaking, the claim isn't against the disciplinary officer who conducted the hearing. It's against the investigative team, if you will, as a whole. And the ultimate decision, the whole investigatory process is salvaged. Your Honor, in the 1983 context, this Court held in the Hines decision, which is cited in the briefs, and more recently in Bruce v. Yilts, which I submitted as a supplemental authority this morning, excuse me, this afternoon, has held that the sum evidence standard of Superintendent v. Hill does not bar a retaliation claim. And Mr. Laser, if you want to consider it an amendment by the evidence produced at the hearing, we could equally construe his claim as being a First Amendment retaliation claim, because the primary exercise of constitutional rights for which we have argued throughout, he was being punished for by this disciplinary finding was access to the courts. So it's as he's recharacterizing the claim. And in the briefs, we continued it as something to do process, because that's how it began. You have less than a minute left. I'll save it for rebuttal. Thank you. If it may please the Court, my name is William Cashstaller. I'm the Deputy Attorney General with the Office of the Attorney General in Sacramento. And I represent the Supreme Court. I'm a lawyer. I should be in banking, actually. We represent the respondent, George Engel, in this matter, Your Honors. There's no Article III case or controversy and no liberty interest protected by the Fourteenth Amendment, primarily not because the credits were restored. It's because he's a lifer and he gained no credits, nor does he lose credits under the sentencing scheme in California. They were never really an issue. Well, why is he eligible for parole, then? Because under the statute, under 3040S of the Penal Code, he's sentenced to life with possibility of parole and he comes before the board. So then his sentence could be affected, then. I mean, if he can come up for parole and he has a disciplinary infraction on it that guides the parole board decision, then why wouldn't that affect the length of his sentence? Well, you're talking about collateral consequences. And Your Honor pointed out earlier, this is one of 18 in 96, one of 17 in 1994 at the hearing, and it would be speculative at most. As counsel suggested earlier, there were other elements. Well, first of all, the board in both instances, 96-94, said the life crime was serious and that was one of the reasons. Also said that the ---- Absolutely. I think the only burden that the petitioner has is to show a likelihood. Is that right, something like that? That there's a likelihood that it would affect the parole decision? No, because then you're moving away from the issue of it being speculative. There is no reasonable likelihood under the circumstances if you have 18 disciplinaries, and we're discussing only one, if you have a life crime, if you have him failing to participate in self-help programs, in therapy, et cetera, and that was the basis for the denial in both instances. So it would be speculation at most. There's such broad discretion exercised by the Board of Prison Terms. They look at a broad assessment of facts when they make their decision. And under those circumstances, it's sheer speculation to suggest that this one disciplinary had any effect. No, we can speculate. We can say, okay, if he's got 18, it's not going to have any effect. If he has three, it may have an effect. But why should we do that? If this could have an effect and it is a serious charge and he wants it expunged, why don't we just deal with the merits of whether or not he was denied due process? Isn't that what the district court did? Well, under Wilson, though, it made very clear that the disciplinary really has no effect in terms of the speculation at most because it is, again, there is so much discretion. Well, you're trying to argue that he can't raise any challenge to his violations of his constitutional rights in these hearings as long as he's got more than one against him. And that doesn't make sense to me. That's where you end up. Well, I'm arguing the facts of this case. Well, you'd be arguing the same thing if there were 10, if there were 9, if there were 8. I mean ---- Well, let's go back to the merits of the case then. Then that's what I'd like to do. We go back to the due process and the sum evidence standard. Clearly, there was a notice, there was an opportunity to respond, and a written statement at the end. That's Wolf. We have the sum evidence. Petitioner concedes there was sum evidence. That ends the debate. That should end the issue here before this Court. What about the substantive due process claim? The retaliation claim. Well, I would like to point out to the Court the writing in Hine, which counsel just made reference to, quote, Obviously, the deferential standard, and we're talking about the sum evidence standard here, would never apply if prisoners could simply fashion their complaint to allege retaliation based on the disciplinary charge instead of the punishment. That's exactly what's happening here. The counsel or Petitioner can't argue against the hearing officer because he was neutral. Testimony during the hearing, and you have in your transcripts, was that he didn't even know this gentleman beforehand. But counsel, didn't Hine say that if the, if it's a retaliation claim, the sum evidence standard doesn't apply? As to the officer. Right. We're talking process here. We're talking about whether or not he had an opportunity, notice, et cetera. So you make a distinction between the individual actors and the process. Correct. Okay. And so you're saying insofar as the process is concerned, you look at the sum evidence standard. Correct. And if he were accusing an individual officer. In a civil rights action, yes. Which we don't have. Okay. I understand your argument. I might also add that retaliation in my, in, is not a proper issue for habeas corpus decision. And I want to add that the retaliatory animus did not exist. The process provided Petitioner was, it did satisfy Wolf. And this was a process that he repeatedly rejected throughout the process. For these reasons, the court should affirm the decision beforehand. Let me ask you this, counsel. If the retaliatory conduct claim doesn't lie under habeas, couldn't we just construe it as a 1983 claim and then address the merits that way? You can make it, you can construe it as a civil rights action. Because you have a three-day evidentiary hearing in front of you. Right. Okay. Thank you, Your Honor. Thank you, counsel. Two very quick points, if I may, in my minute remaining. Very briefly. Hines does contain language that suggests, as Mr. Castellar said, but I think cannot fairly be read as precluding a challenge to the 115 finding itself, as opposed to the charges against the officer. Please read Hines in light of the authority that it cites for that proposition, which is Barnett v. Santoni, which specifically applies a sum evidence standard only because the 115 for which there was sum evidence on Barnett was not the action challenged as retaliatory. It was a reclassification in Barnett that was challenged as retaliatory, and because this other 115 was an alternate ground, that was found to be acceptable. Also, in Bruce, which follows Hines, it indicates that the 115 itself can be challenged as retaliatory. And finally, if this Court is to go on to the merits, whether deemed habeas or 1983, as I request, the only reason for a remand for actual factual findings on the retaliation claim will be if what is dispositive is a credibility determination. But I don't think it is necessarily dispositive. If we set aside Mr. Lazer's testimony, there is still enough there in terms of ignoring the alternate evidence, not looking for alternate perpetrators, resolving Mr. Romero's charges. Thank you, Your Honor. The case just argued is submitted for decision.
judges: Schroeder, Tashima, Rawlinson